UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RAYMOND W. NEYHART,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>  Defendant. | CASE NO. 15-cv-05327 RSL JRC<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: December 4, 2015 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* Dkt. 13, 16, 17).

After considering and reviewing the record, the Court concludes that the ALJ erred when evaluating the medical opinions of examining doctor, Dr. Staker. Although Dr. Staker opined, based on her examination, that plaintiff probably could not work at all,

and if he could work, it would have to be at the sedentary level, the ALJ found that the objective evidence demonstrated that plaintiff could work at the light level of exertion. However, the ALJ failed to explain why his interpretation of the objective medical evidence was more correct than the medical opinion of examining orthopedic surgeon, Dr. Staker.

Furthermore, although the ALJ found that plaintiff's activities of daily living demonstrated that he could work at the light exertional level, sorting clothing and talking to customers for three hours does not demonstrate that plaintiff could stand and/or walk for six hours in an eight hour workday.

For the reasons discussed herein, the Court concludes that this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation.

## BACKGROUND

Plaintiff, RAYMOND W. NEYHART, was born in 1961 and was 48 years old on the alleged date of disability onset of August 1, 2009 (*see* AR. 184-89, 190-93). Plaintiff completed high school and three years in vocational technical school (AR. 42). Plaintiff has past work experience installing heating/cooling equipment, as a driller/construction worker and a yard/lawn worker (AR. 223, 249-52).

According to the ALJ, plaintiff has at least the severe impairments of "osteoarthritis of the right knee, right shoulder, left shoulder, right hand, and right great toe; bilateral biceps tendon tears; irritable bowel syndrome; hepatitis C; and right

shoulder impingement status post surgery (20 CFR 404.1520(c) and 416.920(c))" (AR. 15).

At the time of the hearing, plaintiff was living alone in an apartment (AR. 53).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 78-82, 83-88, 91-97, 98-104). Plaintiff's requested hearing was held before Administrative Law Judge Gary Elliott ("the ALJ") on September 6, 2013 (*see* AR. 36-75). On September 13, 2013, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 10-35).

On March 16, 2015, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (AR. 1-7). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in May, 2015 (*see* Dkt. 3). Defendant filed the sealed administrative record regarding this matter ("AR.") on August 21, 2015 (*see* Dkt. 10).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the administrative law judge (ALJ) erred by failing to provide clear and convincing reasons supported by substantial evidence in the record for the weight afforded to the opinion of Lynn Staker, M.D., an examining source; (2) Whether or not the ALJ erred by

failing to provide germane reasons for the weight afforded to the opinions of Allyson Ochsner, ARNP, and Leonard Puett, PAC; and (3) Whether or not these errors were harmful and warrant a finding of disability as of plaintiff's 50th birthday and remand for further consideration from plaintiff's alleged onset date until his 50th birthday (*see* Dkt. 13, pp. 1-2).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Whether or not the administrative law judge (ALJ) erred by failing to provide clear and convincing reasons supported by substantial evidence in the record for the weight afforded to the opinion of Lynn Staker, M.D., an examining source.**

Plaintiff contends that the ALJ erred when evaluating the medical opinion of Dr. Lynn L. Staker, M. D., who examined plaintiff on April 28, 2012 (Opening Brief, Dkt. 13, pp. 4-7). Defendant contends that there is no error and the ALJ's findings are supported by substantial evidence in the record as a whole (Response, Dkt. 16, pp. 3-6).

It was Dr. Staker's opinion that any work that plaintiff could perform would have "to be at a sedentary type of level," which by definition includes limitations on standing and/or walking (AR. 448). The ALJ does not discuss any medical opinion from an

acceptable medical source in the record that contradicts the medical opinion from Dr. Staker regarding the limitation to sedentary work. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)).

Although PAC Leonard Puett indicates that plaintiff had lifting abilities consistent with light work (*see* AR. 457), he opined that plaintiff only could stand for a maximum of five hours in an eight hour work day, consistent only with sedentary work (*see* AR. 453). *See* 1983 SSR LEXIS 30 at 14 ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"). Although his opinion appears to contradict in part the opinion from Dr. Staker, it does not support the ALJ's conclusion that plaintiff is capable of a full range of light work. For that matter, the ALJ has failed to provide any specific support for rejecting PAC Puett's conclusion that plaintiff only could stand for a maximum of five hours in an eight hour work day.

The ALJ's review of the record does not reveal any medical opinion, from an acceptable source or otherwise, that plaintiff can stand and/or walk for six hours in an eight-hour workday; and, it appears that the ALJ makes this finding based on his own interpretation of the medical evidence. When an opinion from an examining doctor is contradicted by other medical opinions, the examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th

Cir. 1983)). An ALJ may disregard opinion evidence provided by other medical sources, such as PAC Puett's opinions, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ did not provide specific and legitimate reasons supported by substantial evidence to reject Dr. Staker's opinon and did not provide germane reasons for failing to incorporate all of PAC Puett's opinions. Instead, the ALJ came up with his own opinion regarding plaintiff's ability to stand for a total of approximately 6 hours of an 8-hour workday. Therefore, this conclusion is not supported by substantial evidence in the record.

The ALJ failed to credit fully the medical opinions of Dr. Staker in part due to a finding that "she appears only to indicate that [plaintiff] is not employable in heavy-duty labor work" (AR. 26). This finding is directly contradicted by the record as Dr. Staker indicated that any work that plaintiff could perform would have "to be at a sedentary type of level" (AR. 448).

The ALJ also indicated that to the extent that Dr. Staker opined that plaintiff is capable of no work or only sedentary work, ALJ indicated that he found that plaintiff's "objective findings upon examination and imaging studies are consistent with the claimant being capable of performing work at the light exertional level with the postural, reaching, handling, fingering, feeling, and environmental limitations described herein" (AR. 26 (internal citations omitted)). However, the Court concludes that there are

multiple problems with this rationale for failing to credit fully this opinion from Dr. Staker.

First, the Court notes that the ALJ simply has provided his own conclusion of what he believes the medical evidence supports, contrary to the opinion from the medical source, and the ALJ fails to explain why his opinion is more correct than that of Dr. Staker. However, an ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). This, the ALJ failed to do. *See id.; see also Schmidt v. Sullivan*, , 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)). Therefore, the ALJ committed legal error.

Furthermore, this finding by the ALJ is not based on substantial evidence in the record as a whole, as discussed further below. *See Lester*, *supra*, 81 F.3d at 830-31 (citations omitted).

In addition, the ALJ has not specified which objective findings he considers not to be consistent with the medical opinion of Dr. Staker. Instead, the Court is left to speculate as to what evidence the ALJ relies on for his findings. *See Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)) ("[l]ong-standing principles of administrative law require

us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"). Therefore, the ALJ's rejection of Dr. Staker's opinion based on this finding is not sufficiently specific.

Although the ALJ references "objective findings," there are many objective findings noted by the ALJ that fully support the medical opinion of Dr. Staker. Most notably, the ALJ notes as follows:

> On June 9, 2010, an MRI of the claimant's right knee demonstrated osteoarthritis and chondrosis of the patellofemoral compartment with a complete loss of joint space and cartilage within the patellofemoral compartment with numerous areas of subchondral cystic change and marrow edema; degenerative tears of the posterior horns of the medial and lateral menisci with focal areas of severe chondrosis; two discrete joint bodies within the posterior joint space; and prominent soft tissue ganglion present at the gastrocnemius insertions into the distal femur.

(AR. 19 (*citing* AR. 332-33)). Dr. Staker explicitly relied on these MRI findings when providing opinions regarding plaintiff's work limitations and the Court concludes that they support the opinions (AR. 447). Again, the ALJ has not explained why his interpretation of the objective medical evidence is more correct than that of Dr. Staker, who appears to be an orthopedic surgeon (*see, e.g.*, AR. 444; *see also* 445-48).

The ALJ also noted that an x-ray completed on June 22, 2010 of plaintiff's right foot "demonstrated severe degenerative osteoarthritis involving the first metatarsophalangeal joint with surrounding sclerosis in marginal osteophyte formation with significant joint space narrowing and erosions" (AR. 19). Dr. Staker also appears to

have relied on these x-ray findings when providing his opinion and the Court concludes that they too support his opinion (AR. 447).

When discussing the objective findings, the ALJ also noted that a May 14, 2010 x-ray of plaintiff's right knee "demonstrated severe degenerative osteoarthritis of the patellofemoral joint with mild degenerative osteoarthritis of the femoraltibial joint" (AR. 18 (*citing* AR. 337-38)). Other "objective findings" within the ALJ's discussion that support the medical opinion of Dr. Staker include that on March 16, 2011, plaintiff's examination revealed "severely limited range of motion in his right great toe with osteophytes throughout the dorsum aspect of his right first metatarsophalangeal joint" and that he had "severe flattening of the right first metatarsal head" (AR. 20 (*citing* AR. 275)). The Court also notes that this examination revealed "pain upon palpitation" (AR. 275). The ALJ notes that this objective finding also was verified by Dr. Staker when she observed that plaintiff's "right great toe was very thickened and swollen at the MP joint with virtually no motion or mobility and with generalized tenderness" (AR. 21 (*citing* AR. 560)). Subsequent to the examination from Dr. Staker, the ALJ noted that on February 21, 2013, plaintiff was examined by Dr. Spencer Coray, M.D. who reviewed plaintiff's right knee x-rays and noted that plaintiff "had end-stage degenerative changes of the patellofemoral joint and mild early changes in the lateral compartment" (AR. 24 (*citing* AR. 579)). The ALJ noted the medical opinion of Dr. Coray that "there was no easy answer for this type of problem" (AR. 579). The Court concludes that these additional findings, especially the medical opinion of Dr. Coray regarding plaintiff's

"end-stage degenerative changes of the patellofemoral joint," also provide support for the medical opinion of Dr. Staker that plaintiff could perform at most sedentary work.

The Court also notes that further supporting the opinion of Dr. Staker that plaintiff likely could not work, is her finding based on imaging studies that plaintiff's right hand demonstrated "degenerative almost bone-on-bone arthritic changes at the MP joint of the third digit of the right hand" (AR. 561). Although this finding supports Dr. Staker's opinion that "it is somewhat doubtful that [plaintiff] would be employable," (*id.*), the ALJ appears to discount the almost bone-on-bone arthritic changes in plaintiff's right hand by noting x-rays of plaintiff's lumbar spine and right foot (*see* AR. 21). The ALJ does not explain why findings with respect to plaintiff spine and right foot negate almost bone-on-bone arthritic changes in plaintiff's right hand (*see id.*).

For the reasons discussed and based on the record as a whole, the Court concludes that a plethora of objective findings in the ALJ's written decision adequately supports the medical opinions of Dr. Staker regarding limitations on plaintiff's ability to perform work activities. The Court also concludes that the ALJ failed to explain why his interpretation of the "objective findings" was more correct than that of Dr. Staker.

Finally, although the ALJ also fails to credit fully the medical opinion of Dr. Staker based in part on a finding that plaintiff's activities of daily living were inconsistent with Dr. Staker's opinion, the Court concludes that this finding too is not supported by substantial evidence in the record as a whole. The activities of daily living cited by the ALJ include that plaintiff "engages in various volunteer activities, including helping someone put up curtains and spending three hours at a time sorting clothes" (AR. 26).

Plaintiff testified that he helped a lady hang a curtain rod and that it took him ten minutes; and testified that he volunteered doing activities such as sorting clothing and talking to street people for about three hours (AR. 44-45, 61).  The Court concludes that the ability to hang a curtain rod in ten minutes and to sort clothing and talk to people for three hours do not demonstrate that plaintiff can "stand and/or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday," as found by the ALJ and as required for light work (AR. 16). The finding by the ALJ that plaintiff "described volunteer activities that are consistent with light exertional work" is not a finding based on substantial evidence in the record as a whole (AR. 26). Therefore, this finding does not provide a legitimate basis for the ALJ's failure to credit fully the medical opinion of examining doctor, Dr. Staker.

The Court also concludes that the ALJ's error in his evaluation of the medical opinion of Dr. Staker is not harmless error.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (*citing Stout,* 454 F.3d at 1055-

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 11

56). In *Marsh*, even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (*citing* 20 C.F.R. § 404.1527(d)(1)-(3)).

Here, the Court cannot conclude with confidence "'that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh*, *supra*, 792 F.3d at 1173 (*citing Stout,* 454 F.3d at 1055-56). Dr. Staker opined that "it is somewhat doubtful that [plaintiff] would be employable," (AR. 561), and that if he was employable it would have "to be at a sedentary type of level" (AR. 448). Had the ALJ credited these opinions fully, plaintiff's RFC definitely would be different, potentially resulting in a finding of disability. The Court also notes plaintiff's argument that had the ALJ credited fully the opinions of Dr. Staker, "the ALJ would have been required to find plaintiff disabled as of his 50th birthday under the Medical-Vocational guidelines" (Dkt. 13, p. 12 (*citing* 20 C.F.R. Pt. 404, subpt. P, App. 2, Rule 201.12, 201.14)). Therefore, the ALJ's error in the evaluation of the medical opinions of Dr. Staker is not harmless error.

 (2) **Whether or not the ALJ erred by failing to provide germane reasons for the weight afforded to the opinions of Allyson Ochsner, ARNP, and Leonard Puett, PAC**.

The Court already has concluded that the ALJ erred in his assessment of the medical opinion of Dr. Staker, *see supra*, section 1. For this reason, and based on the

record as a whole, the Court concludes that following remand of this matter, the ALJ should evaluate anew the opinions of Allyson Ochsner, ARNP, and Leonard Puett, PAC. For example, when failing to credit fully the opinion of Nurse Ochsner, the ALJ relied on a finding that plaintiff's "imaging findings are consistent with the claimant being capable of light exertional work . . . ." (AR. 25). However, as already discussed in the context of the medical opinion evidence of Dr. Staker, *see supra*, section 1, the Court has concluded that this finding by the ALJ is not supported by substantial evidence in the record as a whole.

> (3) **Whether or not these errors were harmful and warrant a finding of disability as of plaintiff's 50th birthday and remand for further consideration from plaintiff's alleged onset date until his 50th birthday**.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved

> before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, plaintiff contends that this matter should be remanded for payment of benefits as of plaintiff's 50th birthday and that further administrative consideration should be given to the issue of whether or not plaintiff was disabled from his alleged onset date of August 1, 2009 until his 50th birthday. However, the Court concludes that outstanding issues must be resolved as it is not clear from the medical evidence exactly when plaintiff's limitations rendered him disabled pursuant to the Social Security Act. *See id.* This initial determination is best left to the ALJ.

## CONCLUSION

The ALJ erred in his review of the medical evidence and did not explain why his interpretation of the objective medical evidence was more correct than the interpretation of plaintiff's examining orthopedic surgeon.

Based on the stated reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. **JUDGMENT** should be for **plaintiff** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for

1 purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

2 Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

3 matter for consideration on December 4, 2015, as noted in the caption.

Dated this 9th day of November, 2015.

J. Richard Creatura
United States Magistrate Judge